UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TALON TOOLS, LLC,<br><br>    PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>    DEFENDANTS. | CASE NO.: 1:25-CV-01193<br><br>JUDGE FRANKLIN U. VALDERRAMA<br><br>MAGISTRATE JUDGE HEATHER K. MCSHAIN |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS IDENTIFIED ON AMENDED SCHEDULE A

Plaintiff, Talon Tools, LLC ("Talon" or "Plaintiff"), submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 (a) and (b)(2) against the Defendants identified on Amended Schedule A (collectively, the "Defaulting Defendants"), based on Plaintiff's action for Trademark Infringement and Counterfeiting (Count I), False Designation of Origin, Passing Off and Unfair Competition (Count II), and Violation of the Illinois Uniform Deceptive Trade Practices Act (Count III).

Plaintiff creates, markets, and sells tools designed to improve building techniques and training while simultaneously improving job site safety and employee retention. [21] at ¶ 13. Plaintiff created a builder's tool called the Stud Master, which is a precision framing tool that identifies the center of wall studs efficiently and accurately (hereinafter referred to as the "Stud Master Products"). *Id.* at ¶ 14. Plaintiff is the owner of the federally registered **Stud Master 16**

1

Trademark (hereinafter referred to as the "Stud Master Trademark").[1] *Id.* at [9]. The success and widespread popularity of the Stud Master brand and Stud Master Products has resulted in significant counterfeiting and intentional copying. *Id.* at ¶ 21.

This action was filed to combat online trademark infringers who trade upon Plaintiff's valuable trademark by selling and/or offering for sale counterfeit products in connection with Plaintiff's federally registered Stud Master Trademark (hereinafter referred to as "Counterfeit Products"). Talon filed its Amended Complaint on March 20, 2025 alleging, among other claims, federal trademark infringement, and sought statutory damages and injunctive relief. [21]. This Court granted Talon's *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO") on April 29, 2025, [23]; granted an extension of the TRO on May 16, 2025 [29]; and subsequently converted the TRO into a Preliminary Injunction on June 3, 2025. [33].

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Talon now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Talon's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Talon further seeks an award of statutory damages against each of the Defaulting Defendants as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark infringement. Talon also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Products, using the Stud Master Trademark, and an order that all assets in Defaulting Defendants' financial accounts, including those operated by e-commerce platforms and payment processors, including but not limited to: Alibaba Group Holding. Ltd. ("Alibaba"), Alipay US, Inc. ("Alipay); PayPal, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), and Stripe, Inc. ("Stripe") (collectively referred to herein as "Third-Party Providers"), as well as any newly discovered assets, be transferred to the Plaintiff.

---

[1] A true and correct copy of Plaintiff's Trademark Registration was filed as Exhibit 1 to the Amended Complaint. [21]

## ARGUMENT

I.     **JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The Defaulting Defendants operate online marketplace accounts (referred to herein as "Defendant Internet Stores" or "Seller Aliases") that offer shipping into the United States, including Illinois, through which they sell Counterfeit Products. Accordingly, this Court has personal jurisdiction over Defaulting Defendants, since they directly target business activities toward consumers in Illinois and cause harm to Plaintiff's business within this Judicial District. [21] at ¶¶ 1-3; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor). Defaulting Defendants are committing tortious acts, engaging in interstate commerce, and wrongfully causing Plaintiff substantial injury in the State of Illinois. *Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-5846 (N.D. Ill. Dec. 12, 2018).

II.     **PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT**

    Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

On March 21, 2025, Talon filed its Amended Complaint [21]. Defaulting Defendants were properly served on May 27, 2025. [32]. Despite having been properly served with process, Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. *See* the Declaration of Alison K. Carter (hereinafter referred to as "Carter Decl.") at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. More than twenty-one (21) days have passed since Defaulting Defendants were served, and no answer, or other responsive pleading, has been filed by any Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants, which is appropriate, and consistent with previous similar cases in front of this Court.

### III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that Defendants are liable to Plaintiff on each cause of action alleged in the Complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the Complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the Complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

#### A. Trademark Infringement and Counterfeiting; False Designation of Origin; and Violation of the Illinois Uniform Deceptive Trade Practices Act

To properly plead a claim of trademark infringement and counterfeiting, pursuant to the Lanham Act, a plaintiff must allege that: (1) its mark is distinctive enough to be worthy of protection; (2) defendants are not authorized to use the mark; and, (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See*

4

*Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001)). This is the same test that is used for a false designation of origin claim under the Lanham Act and claims under the Illinois Uniform Deceptive Trade Practices Act. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999).

Talon alleged in its Complaint that: (1) the Stud Master Trademark is federally registered and distinctive; (2) Defaulting Defendants are not authorized to use the Stud Master Trademark; (3) Defaulting Defendants' use of the Stud Master Trademark causes a likelihood of confusion; and, (4) Defaulting Defendants have knowledge of Plaintiff's exclusive rights in and to the Stud Master Trademark. [21] at ¶¶ 9, 34-40, 45-50, 54-55. Since the Defaulting Defendants have failed to respond, or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008).

Accordingly, Plaintiff respectfully requests entry of judgment with respect to Count I of Plaintiff's Amended Complaint for willful infringement and counterfeiting of the Stud Master Trademark under 15 U.S.C. § 1114; Count II for false designation of origin, passing off, and unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125; and Count III for willful violation of the Illinois Uniform Deceptive Trade Practices Act under 815 ILCS §510, *et seq.,* against the Defaulting Defendants.

IV. **PLAINTIFF IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE RELIEF**

The award of statutory damages serves dual interests, in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who

are intentionally mislead into purchasing low quality, counterfeit products, over the Internet, the present circumstances warrant the award of statutory damages to both penalize Defaulting Defendants, as well as to deter future violations.

### A. Statutory Damages are Appropriate in this Case

Section 35 of the Lanham Act, 15 U.S.C. § 1117, provides monetary remedies for trademark infringement, unfair competition, and willful trademark dilution. Subsection 1117(a) allows for recovery of: a defendant's profits; any damages sustained by the plaintiff; costs of the action; and, in exceptional cases, the plaintiff's attorney fees. Subsection 1117(b) applies to the intentional use of a known counterfeit mark, and it requires the court to treble the profits or damages referenced in subsection 1117(a), and reasonable attorney fees "unless the court finds extenuating circumstances."

While §§ 1117(a) and (b) focus on a plaintiff's "actual damages," subsection 1117(c) offers an alternative for counterfeit mark volations by allowing statutory damages in lieu of actual damages. A "counterfeit mark" is defined at 15 U.S.C. § 1116(d)(1)(B)(i) as, in relevant part:

> "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."

The option to recover statutory damages was provided in light of Congress' recognition that counterfeiters' records are frequently "nonexistent, inadequate, or deceptively kept[,] . . . making proving actual damages in these cases extremely difficult if not impossible." S. Rep. No. 104-177, at 10 (1995). Statutory damages thus provide a powerful incentive for a trademark holder to pursue infringement litigation that might otherwise not be undertaken because of the inability to obtain information to support recovery.

Pursuant to the statutory damages provision of the Lanham Act, a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than

$200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, statutory damages may be awarded up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The Office of the U. S. Trade Representative has recognized that reduced damages may be warranted in certain copyright cases to avoid impeding new creative works, such as remixes – defined as works created through changing and combining existing works to produce something new and creative.[2] *Id*. at 98. However, in cases of willful infringement, such as before this Court, the same report finds that high statutory damages are warranted, noting that "[t]hese circumstances present the clearest need for deterrence and punishment." *Id*. at 99. The report also highlights disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in services that support such operations. *Id.* With the increase in online sales of infirging goods, the economic toll on infrgement on governments, businesses, and consumers is disturbing.

In recent years, counterfeiters have further evolved from a traditional brick-and-mortar distribution model to direct to consumer sales through the Internet. As such, counterfeiters can reach a much wider audience with little additional investment. Due to this reach, Courts have regularly imposed steeper penalties on those who sold counterfeit merchandise online compared to brick and mortar counterparts.[3] Accordingly, a significant consideration should be whether infringing sales were made over the Internet, with the rationale being that sales over the Internet

---

[2] The Office of the U. S. Trade Representative, Special 301, *Out-of-Cycle Review of Notorious Markets for 2015* (December 2015).
[3] *See generally* INT'L TRADEMARK ASS'N, *Addressing the Sale of Counterfeits on the Internet* (2017), *available at* https://www.inta.org/wp-content/uploads/public-files/advocacy/committee-reports/Addressing_the_Sale_of_Counterfeits_on_the_Internet_021518.pdf (explaining international impact of Internet on counterfeit industry).

increase the amount of an award because use of the Internet made the infringement widely available.

Additionally, the lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Petmed Express, Inc. v. medpets.com, Inc.,* 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co.,* 2008 U.S. Dist. LEXIS 31761, at *11.

    B.    **Defaulting Defendants' Counterfeiting Was Willful**

As alleged in Plaintiff's Complaint, Defaulting Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Stud Master Products. [21] at ¶ 24. In doing so, Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *19-20. As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. In the present case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Talon's rights in its Stud Master Trademark, especially given Talon's extensive promotional efforts discussed in the Complaint. [21] at ¶17-19. Defendants also took great pains to hide their identities in an attempt to avoid being held accountable for their counterfeiting activities. *Id.* at ¶¶ 11, 27. Finally, this Court has deemed counterfeiting conduct to be willful when defendants default. *See Wham-O Holding, Ltd.,* No. 18-cv-05878 (N.D. Ill. Nov. 15, 2018); *Polyblank Designs,* No. 18-cv-5846 (N.D. Ill. Dec. 12, 2018).

8

### C. A High Statutory Damages Award for Trademark Counterfeiting is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting this section have analogized case law applying the statutory damage provision of the Copyright Act, 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10.

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

Generally, courts primarily consider the following factors, when formulating a statutory damages award: (1) the plaintiff's difficulty (or impossibility) in proving their actual damages; (2) the circumstances of the counterfeit activity; (3) deter both defendant and other similarly situated sellers; (4) expenses saved and the profits reaped by the defendant from selling illegitimate products; (5) the revenues lost by the plaintiff due to defendant's counterfeiting activities; (6) the value of the plaintiff's trademark; (7) the willfulness of the defendant's conduct; (8) the defendant's cooperation in court proceedings, including whether or not the defendant appears; (9) whether the counterfeiting activity took place online; and, (10) whether there have been repeated

violations of trademark laws by the defendant. *See Chi-Boy Music, 930 F. 2d at 1229; See also Lorillard Tobacco Co., 2004 U.S. Dist. LEXIS 22563, *16; see also, Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1347 (7th Cir. 1994); see also, Luxottica Grup S.p.A., and Oakley, Inc., v. Zhiqiang, et. al., No. 16 C 7988 (N.D. Ill. Mar. 17, 2017); see also, Coach, Inc. v. Ocean Point Gifts, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010); and see also, Phillip Morris USA Inc. v. Marlboro Express, 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005)*. Plaintiff respectfully requests entry of a statutory damages award in the amount of fifty thousand dollars ($50,000) per Defaulting Defendant as is appropriate when analyzing these factors.

A majority of the above-mentioned factors weigh heavily in Plaintiff's favor. First, it is impossible for the Plaintiff to prove actual damages without Defaulting Defendants participation in the case, as the Defaulting Defendants alone control the relevant business records, and intentionally avoid appearing in the case to conceal these records. Even if these records were to become available, any damage calculation based on the Defaulting Defendants' sales figures would not account for the irreparable harm to the Plaintiff, such as loss of control over intellectual property, reputation, and goodwill. The Plaintiff should not be punished for its inability to effectively calculate damages, nor should it be forced to do so without Defaulting Defendants' participation. It is for this reason that statutory damages exist. *See Chi-Boy Music*, 920 F. 2d at 1229.

Second, the counterfeiting activity in this case involves Defaulting Defendants' unauthorized use of the Stud Master Trademark. Below is the summary of the limited information provided by Third-Party Providers, regarding the Defaulting Defendants' circumstances of infringement. Carter Decl. at ¶ 4:

| DEFENDANT | NO. OF INSTANCES OF INFRINGEMENT | KNOWN REVENUE FROM COUNTERFEIT PRODUCT SALES |
|---|---|---|
| 1. Zhongshan Qixiang Electrical Appliance Co., Ltd. | 3 | $120 |
| 2. Dongguan Qinbu Metal Technology Co., Ltd | 1 | $40 |

This factor is closely related to factors four and five: (4) expenses saved and the profits reaped by the defendant from selling illegitimate products; (5) the revenues lost by the plaintiff due to defendant's counterfeiting activities. It is difficult to calculate: the expenses saved by Defaulting Defendants, the profits reaped by the Defaulting Defendants, and the full extent of lost revenues of the Plaintiff, without the Defaulting Defendants' participation. However, from the limited information provided by the Third Party Providers, as the information only includes data related to the listings Plaintiff provided in evidence and not a full record of Defaulting Defendants' business activities related to the Plaintiff's intellectual property, it is clear that the Defaulting Defendants made some revenue from the sale of Counterfeit Products.

Even in the absence of significant revenue loss to the Plaintiff from the above specific sales, Plaintiff believes that the Defaulting Defendants generated profits based on the sales of Counterfeit Products, due to the absence of typical business costs, such as: 1) costs associated with research and development of a product; 2) expenses associated with marketing or branding, owing to Defaulting Defendants exploitation of Plaintiff's Stud Master Trademark; 3) reduced production costs; 4) costs saved dur to lack of taxes, tariffs, or compliance costs; 5) costs saved by having minimal or no customer support etc. These cost savings allow the Defaulting Defendants to maximize profit margins on the sales of Counterfeit Products. Carter Decl. at ¶5. Furthermore, Plaintiff suffers greater economic harm beyond lost sales. The mere presence of the Counterfeit Products erodes Plaintiff's brand value, diverts potential future customers, and fosters consumer distrust, leading to great long-term businesses losses that are difficult to quantify. Thus, even where

11

immediate lost revenues are not significant, the economic impact of the Defendants' conduct remains substantial.

The value of the Stud Master Trademark is unquantifiable and invaluable to the Plaintiff. As alleged in Plaintiff's amended complaint, Plaintiff invested substantial time, energy, money, and resources in developing consumer recognition, awareness, and goodwill in the Stud Master Products and Stud Master Trademark. [21] at ¶17. Given Plaintiff's significant investment in promoting and protecting its intellectual property, this Court should be guided by the *Lorillard* case and consider the "significant value of the brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16.

Next, Defaulting Defendants' willful conduct is clear: Defaulting Defendants were aware of the success and value of the Plaintiff's Stud Master Trademark and voluntarily and knowingly took advantage of it. Furthermore, their lack of appearance in this case indicates a likely strategic decision to evade consequences for their infringing activity thereby increasing the need for the damages award to have a deterrent effect. In this instance, it is important to deter the Defaulting Defendants and similarly situated sellers as counterfeiting/infringement is a rapidly expanding, multi-billion-dollar industry which has significant ramifications, as mentioned *supra*. Imposing substantial damages is necessary to reflect the severity of the activity and to deter future misconduct. *See Sands, Taylor & Wood v.Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994); *see also, Phillip Morris USA Inc. v. Marlboro,* 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005).

Lastly, the infringing activity took place online, which naturally increases the size and scope of the infringement. Defaulting Defendants, as online sellers, were able to reach a vast consumer base. As such, this Court should be guided by the *Coach, Inc* case and award high damage awards "due in part to the wide market exposure that the Internet can provide" *See Coach,*

*Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010). In similar cases involving willful Internet-based counterfeiting, courts in this district have awarded significant damages, per defaulting defendant, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others similarly situated from bringing counterfeit goods into commerce; (2) compensating the plaintiff for damages caused by defendant's infringement; and, (3) punishing the defendant appropriately for counterfeiting activities. *See, e.g., Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. [44, 45]) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. [36, 37]) (awarding $2,000,000 in statutory damages per defendant). Given the Court's discretion in determining the appropriate statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Talon respectfully requests the Court's entry of an award of fifty thousand dollars ($50,000) per Defaulting Defendant for willful trademark infringement.

### D.   Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the damages requested, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Talon's registered intellectual property rights in and to the Stud Master Trademark, including at least all injunctive relief previously awarded by this Court to Talon in the TRO and Preliminary Injunction. Injunctive relief should also be granted so that the Plaintiff may quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and which sell unauthorized Stud Master Products.

## V. CONCLUSION

Talon respectfully requests that the Court: enter default and grant default judgment against each Defaulting Defendant; award statutory damages in the amount of fifty thousand dollars ($50,000) per Defaulting Defendant for willful trademark counterfeiting, pursuant to 15 U.S.C. § 1117(c); enter a permanent injunction order, prohibiting Defaulting Defendants from selling Counterfeit Products, using the Stud Master Trademark without authorization; and, enter an order directing any Third Party Providers to transfer all assets in Defaulting Defendants' financial accounts to Plaintiff.

Dated: July 17, 2025

Respectfully submitted,

*/s/ Gouthami V. Tufts*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts
John J. Mariane

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd., Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
g.tufts@scip.law

***ATTORNEYS FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 17, 2025, a true and correct copy of the above and foregoing document was: electronically filed, with the Clerk of the Court using the CM/ECF system; electronically published on a website to which the Defendants have been directed pursuant to the Service of Process; and emailed to all email addresses identified or provided for Defendants by the Defendants or third-parties, which includes a link to said website and a copy of the documents which have been filed by the Plaintiff.

*/s/ Gouthami V. Tufts*
Gouthami V. Tufts